UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| THOMAS J. YARBROUGH<br>    LA. DOC #480233<br>VS. | CIVIL ACTION NO. 3:12-cv-0691<br><br>SECTION P<br><br>JUDGE ROBERT G. JAMES |
| JOHN SMITH, ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Thomas J. Yarbrough, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on March 16, 2012. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Tensas Parish Detention Center (TPDC), Waterproof, Louisiana. Plaintiff complains that he is receiving inadequate medical care and he prays for compensatory and punitive damages; in a separate pleading he prays for emergency injunctive relief.   He sued the TPDC, its Warden John Smith, and Nurses Helen Leonard, Ellen Storyes, and Sarah Lee.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted. It is also ordered that the "Application and Motion Application for Writ of Habeas Corpus and Preliminary Injunction Against Warden John Smith, LPN Helen Leonard, and Dr. Sarah Lee." [Doc. 7] be **DENIED.**

*Statement of the Case*

***1. Original Complaint [Doc. 1] and Amended Complaint [Doc. 8]***

Plaintiff's original complaint, filed on March 5, 2012 [Doc. 1], his motion for injunctive relief [Doc. 7], and his first amended complaint filed on April 9, 2012 [Doc. 8] alleged the following detailed chronology:

On September 15, 2011, plaintiff was sentenced to serve 3 years at hard labor and thereafter he was committed to the custody of the LDOC. On December 15, 2011, he was transferred from Grant Parish to TPDC, his present place of confinement. While at Grant Parish, plaintiff was under the care of Dr. Goddly and was receiving six 50 mg tablets of the pain medication, tramadol.[1]

Following his transfer to TPDC, plaintiff was seen by Dr. Lee. On January 6, 2012, Lee reduced plaintiff's pain prescription to one 50 mg tablet of tramadol per day. Lee provided plaintiff with refills of "lisinapral and clondine."[2]

On January 20, 2012, plaintiff experienced chest pain, "blood pressure", and back pain.

---

[1] Tramadol is used to relieve moderate to moderately severe pain. Tramadol is in a class of medications called opiate agonists. It works by changing the way the body senses pain. Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs & Supplements, http://www.nlm.nih.gov/medlineplus/druginformation.html

[2] Plaintiff probably means "Lisinopril" a medication used alone or in combination with other medications to treat high blood pressure. It is used in combination with other medications to treat heart failure. Lisinopril is also used to improve survival after a heart attack. Lisinopril is in a class of medications called angiotensin-converting enzyme (ACE) inhibitors. It works by decreasing certain chemicals that tighten the blood vessels, so blood flows more smoothly and the heart can pump blood more efficiently. Plaintiff also probably means "Clonidine", a medication used alone or in combination with other medications to treat high blood pressure. Clonidine is in a class of medications called centrally acting alpha-agonist hypotensive agents. It works by decreasing your heart rate and relaxing the blood vessels so that blood can flow more easily through the body. *Id.*

Dr. Lee prescribed a new blood pressure medication and a steroid and muscle relaxer. Plaintiff also advised Nurse Taylor that plaintiff had an appointment with Dr. Goddly on January 23.

On the morning of January 23, 2012, plaintiff advised Nurse Leonard that he was missing his appointment with Dr. Goddly. Leonard agreed to investigate and on the following day advised plaintiff that his file was lost. Later, plaintiff discovered that his January 23 appointment was rescheduled for a date 2 months later by Nurse Story.

On January 24, 2012, plaintiff attempted to give a "sick call" request to Nurse Leonard during the 8 a.m. "pill call." Leonard refused to take his request. Plaintiff complained about chest pains and she scheduled him for sick call on the following day.

On February 3, 2012, plaintiff was again examined by Dr. Lee and Nurse Taylor. Plaintiff complained about his blood pressure and chest pains and the missed appointment. According to plaintiff, Nurse Taylor "... noted in my file for Ellen Story in records to set an appt. at England Air Parik/LSU in Alexandria to make sure I didn't have life threatening problems." Meanwhile, Dr. Lee prescribed a new medication; plaintiff claims he "had a reaction to it"; however, he did not identify the medication or describe the reaction.

On February 6, 2012, Nurse Leonard was notified that plaintiff's medication "was to run out on the 6th." Plaintiff submitted a sick call to remind her.

On February 7, 2012, Nurse Leonard noted that plaintiff's "meds were out." She advised plaintiff that she and Nurse Taylor had ample time to confer with Dr. Lee to obtain more medicine. When plaintiff complained and voiced concern Nurse Leonard responded "in a hostile way."

On February 8, 2012, Nurse Taylor obtained refills for plaintiff's prescribed medication.

3

On February 9, 2012, plaintiff submitted another sick call to see Dr. Lee. Nurse Jefferson put plaintiff on the February 10, 2012, list to see Dr. Lee so that he could complain about the new blood pressure and cardiac medications.

On February 10, 2012, plaintiff inquired about his appointment with Dr. Lee and was advised by the corrections officer that Nurse Leonard had removed him from the list since the medication had previously been refilled.

On February 17, 2012, plaintiff was again examined by Dr. Lee. After a discussion of plaintiff's symptoms – chest pains, blood pressure, back pain – she changed the dosage of "Metoporol" from 25 mg to 50 mg and further prescribed 50 mg of "Elivil" for sleep.[3]

On March 4, 2012, plaintiff again complained to Nurse Taylor of high blood pressure, back pain, chest pain, sleep habits and sinus problems. She put him on the list to see a nurse practitioner about his sinus problems. On March 6, 2012, Nurse Leonard removed plaintiff from the list. Plaintiff questioned Ms. Leonard about this and she advised that the nurse practitioner "didn't want to get involved in [plaintiff's] problems." (According to plaintiff, another inmate claims that he overheard Leonard and the nurse practitioner discussing plaintiff's medical problems and this lawsuit.)

On March 7, 2012, plaintiff was questioned by Warden Smith and Asst. Warden

---

[3] Plaintiff probably refers to "metoprolol" a medication used alone or in combination with other medications to treat high blood pressure. It also is used to prevent angina (chest pain) and to improve survival after a heart attack. Metoprolol is in a class of medications called beta blockers. It works by relaxing blood vessels and slowing heart rate to improve blood flow and decrease blood pressure. Plaintiff probably means "Elavil®" or amitriptyline, a medication used to treat symptoms of depression. Amitriptyline is in a class of medications called tricyclic antidepressants. It works by increasing the amounts of certain natural substances in the brain that are needed to maintain mental balance. *Id.*

4

Schoonover about 2 appointments made by plaintiff at the Huey P. Long Hospital. They accused plaintiff of having access to a cell phone and threatened him with disciplinary rules violations.

On March 26, 2012, plaintiff spoke to Dr. Goddly; according to plaintiff, Goddly questioned why plaintiff had missed two appointments during the previous week and plaintiff advised that he was unaware of the appointments.

On March 23, 2012, plaintiff was again examined by Dr. Lee; plaintiff again complained of chest pains, high blood pressure, lower back pain, sinus problems and sleep problems. Lee advised plaintiff that he was scheduled to see Dr. Goddly the following week. Dr. Lee wrote a note to Dr. Goddly asking for advice on the proper dosage of blood pressure medication and requesting a test to determine plaintiff's TSH level.[4] Lee gave the note (a copy of which is at Doc. 7, p. 20) to plaintiff and asked him to pass it on to Dr. Goddly. (According to plaintiff, an inmate told him that he overheard Leonard advising Dr. Lee that plaintiff only wanted "loritabs."[5])

From January 6, 2012, to the date plaintiff filed his amended complaint, April 9, 2012, Nurse Leonard has allowed inmate trusty Patterson to take and record blood pressure without supervision.

---

[4] TSH or thyroid stimulating hormone is produced by the pituitary gland and tells the thyroid gland to make and release the hormones thyroxine (T4) and triiodothyronine (T3). Medline Plus, Health Topics see http://www.nlm.nih.gov/medlineplus/healthtopics.html

[5] Plaintiff probably means Lortab® or hydrocodone a medication available only in combination with other ingredients; different combination products are prescribed for different uses. Some hydrocodone products are used to relieve moderate to severe pain. Other hydrocodone products are used to relieve cough. Hydrocodone is in a class of medications called opiate (narcotic) analgesics and in a class of medications called antitussives. Hydrocodone relieves pain by changing the way the brain and nervous system respond to pain. Medline Plus, Drugs & Supplements.

On March 26, 2012, plaintiff was examined by Dr. Goddly; plaintiff complained of chest pain. Goddly examined the results of unspecified tests and concluded that plaintiff had a high hernia[6] which was causing symptoms similar to those of a heart attack. They then discussed plaintiff's blood pressure and plaintiff gave Goddly the note from Dr. Lee and advised Goddly that Lee had reduced his pain medication as noted above. Goddly then wrote three prescriptions – .3 mg clonidine three times daily; lisinopril 20/25 once daily and 50 mg tramadol three times daily. Plaintiff claims that Goddly ordered him to stop taking the blood pressure medication ordered by Lee and to make an appointment with a mental health clinic. He also ordered blood work and directed plaintiff to return in one month.

Plaintiff gave these orders to Nurse Taylor upon his return to the detention center. On March 27, 2012, Taylor advised plaintiff that Dr. Lee had "put a 'stop'" to Dr. Goddly's orders.

**2. Motion [Doc. 7]**

On April 4, 2012, plaintiff filed a pleading entitled "Application and Motion Application for Writ of Habeas Corpus[7] and Preliminary Injunction Against Warden John Smith, LPN Helen Leonard, and Dr. Sarah Lee." [Doc. 7] In this pleading, plaintiff recited the litany of complaints and events which began with his transfer to TPDC on December 15, 2011, through March 27, 2012. In this pleading plaintiff asserted fault as to each defendant as follows:

---

[6] Hiatal hernia is a condition in which part of the stomach sticks upward into the chest, through an opening in the diaphragm. Symptoms include chest pain, heartburn and difficulty swallowing. A hiatal hernia by itself rarely causes symptoms. Pain and discomfort are usually due to the reflux of gastric acid, air, or bile. Medline Plus, Health Topics.

[7] The pleading is clearly not an application for writ of habeas corpus; plaintiff does not seek his release from custody, nor does he allege that his custody is in violation of the Constitution and laws of the United States.

  1. Dr. Lee failed to carry out the medical orders of plaintiff's "heart doctor" at Huey P. Long Hospital and thus interfered with the treatment prescribed by another physician.

  2. Plaintiff missed an appointment scheduled for January 23, 2012 and did not have another until two months later on March 26, 2012.

  3. On January 24, 2012, Nurse Helen refused to see plaintiff when he complained of chest pain.

  4. On February 5, 2012, Dr. Lee advised the warden that plaintiff "needed to be transferred to another facility because of ... medical problems."

  5. Having an inmate take blood pressure amounts to allowing unqualified personnel to render medical services.

  6. On several occasions Nurse Helen spoke openly in front of other inmates about plaintiff's medical problems.

  7. Dr. Lee changed Dr. Goddly's prescriptions on two different occasions.

  According to plaintiff, as a result of these violations, he has been made to endure added pain in violation of the Eighth Amendment. He concluded by praying for an order (1) requiring the defendants to follow Dr. Goddly's orders; (2) advising Dr. Lee that Dr. Goddly will henceforth treat plaintiff; (3) restraining Nurse Helen Leonard from treating plaintiff; (4) directing the defendants to "turn over copies of [plaintiff's] medical and prison files;" and, (5) directing the defendant warden to transfer plaintiff to Rapides or Catahoula Corrections Center and prohibiting him from communicating to the wardens of these facilities any information concerning plaintiff's medical condition.

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; 28 U.S.C.§1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the

8

complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff has submitted two complaints and a motion; all three documents provide the details supporting his claims for relief. Further amendment is not necessary.

### 2. Medical Care

Plaintiff is an inmate in the custody of the LDOC. He complains that he is receiving inadequate medical care for various conditions – high blood pressure, sleeplessness, and back and chest pain caused by a hiatal hernia. The constitutional right of a convicted prisoner to prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation the prisoner plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the defendants identified in his pleadings. As a matter of fact, it is manifestly obvious that plaintiff simply disagrees with the decisions of the health care professionals who are now responsible for his treatment. Plaintiff's disagreement with their treatment choices does not establish deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

Furthermore, to the extent that the defendants' choices establish negligence or even malpractice on their part, plaintiff still fails to state a claim since deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifference standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the

defendants knew of and then disregarded an excessive risk of injury to him, and that they were both aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they drew that inference. *Id.* at 837. Plaintiff has not identified any "serious harm" that has befallen him as a result of the defendants' treatment choices. In fact, by his own admission, the cardiac symptoms that he complained of were ultimately determined to be the result of a hiatal hernia.

In short, plaintiff disagrees with the treatment protocol established for him at his present place of confinement; it appears that there may be some disagreement between the two treating physicians as to the proper treatment protocol; however, as shown above, disagreement with diagnosis and treatment does not establish deliberate indifference, and plaintiff's failure to allege and demonstrate deliberate indifference warrants dismissal of his complaint for failing to state a claim for which relief may be granted.

### 3. *Injunctive Relief*

Plaintiff seeks injunctive relief – specifically, orders (1) requiring the defendants to follow Dr. Goddley's orders; (2) advising Dr. Lee that Dr. Goddley will henceforth treat plaintiff; (3) restraining Nurse Helen Leonard from treating plaintiff; (4) directing the defendants to "turn over copies of [plaintiff's] medical and prison files;" and, (5) directing the defendant warden to transfer plaintiff to Rapides or Catahoula Corrections Center and prohibiting him from communicating to the wardens of these facilities any information concerning plaintiff's medical condition.

Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" to act or refrain from acting in a certain manner is an extraordinary remedy. *See Morrow*

*v. Harwell*, 768 F.2d 619, 627 (5th Cir.1985). In order to obtain a preliminary injunction or temporary restraining order, a plaintiff must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. *See Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir.2005).

As shown above, plaintiff has not demonstrated that he will likely prevail on the merits of his medical care claims. The facts alleged by plaintiff establish that he is being examined and treated by two physicians and other healthcare professionals.

The findings of these physicians demonstrate that plaintiff is unlikely to be able to establish the threat of irreparable injury. In short, plaintiff is not entitled to Emergency Injunctive Relief and his motions should therefore be denied.

*4. Transfer*

Further, plaintiff seeks a transfer to another facility where he can receive adequate medical attention. However, such relief is not available, even if his medical care claims are otherwise meritorious. Plaintiff is an LDOC inmate. Under Louisiana law, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. <u>The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department</u>..." La.

12

R.S.15:824(A) (emphasis supplied).

Plaintiff is an LDOC inmate and therefore his placement is solely within the purview of both the LDOC and the wardens of the transferring institution and institution to which the prisoner is ultimately transferred. In this regard, broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974) To hold that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Prisoners simply do not have a constitutionally derived liberty interest in being held in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984); *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000).

Therefore, to the extent that plaintiff seeks an order directing the defendants to transfer him to another prison, his claim should be dismissed for failing to state a claim for which relief may be granted.

*5. HIPAA Violations*

Plaintiff also implies that Nurse Helen Leonard violated patient confidentiality rules by discussing plaintiff's medical condition in the presence of other inmates; he also complains that an inmate trusty is allowed to obtain and record plaintiff's daily blood pressure readings. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Plaintiff makes no showing that the fault alleged herein violated the Constitution and laws of the United States. There appears to be a consensus among the United States Courts of Appeal that prisoners have no absolute constitutional right in the privacy of their medical records. *See Walker v. Gerald*, 2006 WL 1997635 (E.D.La.2006) and the cases cited therein.

To the extent that plaintiff might imply a right and cause of action pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104-191, §§ 261-264, 110 Stat.1936 (1996), his claim fares no better. HIPAA is the federal statute which generally provides for confidentiality of medical records. However, as further noted in *Walker v. Gerald*, "... HIPAA provides no express or implied private cause of action for its violation ..." *Walker*, at *6 and cases cited therein.

***Conclusion and Recommendation***

Therefore,

Plaintiff's "Application and Motion Application for Writ of Habeas Corpus and Preliminary Injunction Against Warden John Smith, LPN Helen Leonard, and Dr. Sarah Lee"

14

[Doc. 7] is **DENIED**; and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, May 2, 2012.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE